# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC WESTRY,<br>    Plaintiff,<br><br>    v.<br><br>STAMFORD BOARD OF EDUCATION,<br>    Defendant. | No. 3:17-cv-640 (SRU) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL DISCOVERY RESPONSES

In this employment discrimination claim, pro se plaintiff Eric Westry ("Westry"), a black male, alleges that his former employer, Stamford Board of Education ("the Board"), discriminated against him because of his race and his disability. For the reasons set forth below, I **grant** the Board's Motion for Summary Judgment (Doc. No. 24). Because I am granting the motion, I **deny as moot** the Board's Motion to Compel Discovery Responses (Doc. No. 20).

## I. Background

Westry initiated this employment discrimination action against the Board in April 2017. Compl., Doc. No. 1. Westry alleges that he worked as a school counselor in the Stamford school district beginning in August 2014, and the Board discriminated against him because he is black and has a disability. *Id*. at ¶ 1, 3. In April, 2016, Westry was placed on administrative leave with pay "allegedly for an incident that occurred off the school's campus." *Id*. at ¶ 15. Although not specified in the complaint, the record reflects that Westry was arrested and charged with Risk of Injury to a Child, Interfering with an Officer/Resisting Arrest, Disorderly Conduct, and Assault in the Third Degree. Ex. H to Mot. Summ. J., Doc. No. 24-1 at 32. The charges arose from a domestic disturbance in which Westry allegedly assaulted his wife and locked himself in

a bedroom with their child. *Id.* at 34. When the police gained access to the bedroom, Westry allegedly resisted arrest and he was tased. *Id*. The incident led to a protective order against Westry as well as an investigation by the Department of Children and Families. Ex. D to Mot. Summ. J., Doc. No. 24-1 at 16-17, ¶ 11, 12. According to the Board's Executive Director of Human Relations, Stephen Falcone, that incident did indeed lead to Westry being placed on administrative leave. *Id*. at ¶ 10.

Westry alleges that he was asked to submit a letter of resignation or "face a career ending non-renewal of contract." *Id*. at ¶ 16. In his complaint, Westry argues that the reason for his contract non-renewal, the arrest, was pretextual and, despite satisfactory work performance, the non-renewal was because of "discrimination and retaliation" based on his race and disability. Compl., Doc. No. 1 at ¶ 17. He alleges that the criminal allegations against him were later dismissed. *Id*. at ¶ 18. Although he does not say so in his complaint, the record reflects that Westry did tender a letter of resignation on April 28, 2016. Ex. J to Mot. Summ. J., Doc. No. 24-1 at 38.

As support for his racial discrimination claim, Westry compares the action taken against him by the Board to the action taken against the Executive Director of the Board's Human Resources Department, Falcone, a white male, who was suspended amidst allegations of noncompliance with special education laws, perhaps while superintendent of another school district, but was not terminated. *Id*. at ¶ 22. Westry alleges that Falcone was never fired and Westry's criminal "record [was] being expunged as never existed while [Falcone's] scandal remains with impunity." Compl., Doc. No. 1 at ¶ 22. He highlights as support for that statement that he is black and Falcone is white. *Id*. He states that he had "been discriminated against in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act and other

[f]ederal, state and local anti-discrimination statutes" and that he has been retaliated against in violation of those statutes. *Id*. The Board filed the instant Motion for Summary Judgment on February 15, 2018. Mot. Summ. J., Doc. No. 24.

## II. The Board's Motion for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving

3

party submits evidence that is "merely colorable", or is not "significantly probative", summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party". *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

B. Discussion

1. *Disability Discrimination*

Westry alleges in his complaint that the Board discriminated against him, in part, on the basis of his disability. Although not specifically stated, I construe Westry's complaint to allege a

4

violation of the Americans with Disabilities Act ("ADA"). Courts employ a burden-shifting analysis in reviewing ADA claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "Under that analysis, [a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Young v. Precision Metal Products, Inc.*, 599 F. Supp. 2d 216, 224 (D. Conn. 2009) (internal quotation marks omitted). "[T]o establish a prima facie case under the ADA, [Westry] must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id*.

The Board argues that Westry fails to establish a prima facie case of disability discrimination, and that Westry's complaint lacks any allegations supporting the presence or the Board's knowledge of a disability. Mem. in Supp. Mot. Summ. J., Doc. No. 24-2 at 4-5. The Board argues that it "does not concede or acknowledge that [Westry] had a record of a disability." *Id*. at 5. Indeed, the record is devoid of any information supporting Westry's allegation that he has a disability and was discriminated against because of it. In the opening paragraph of his complaint, Westry alleges that he is black and "had a record of a disability." Compl., Doc. No. 1 at ¶ 1. Westry also states in the complaint that "[s]ince the start of [his] employment … [he] was treated differently because of [his] race and disability." *Id*. at ¶ 5. Westry never elaborates beyond those cursory allegations regarding the nature of his disability nor does he even allege that he disclosed a disability to the Board. Further still, he asserts no allegations supporting his claim that any adverse action was taken on the basis of his alleged

5

disability. In fact, in his opposition to the Board's Motion for Summary Judgment, Westry focuses only on the Board's alleged "institutional racism." Opp. to Mot. Summ. J., Doc. No. 28 at 1. Nowhere in his opposition does Westry take issue with the Board's argument that he failed to establish a prima facie case of disability discrimination. The record is wholly devoid of any support for Westry's allegation that he was discriminated against on the basis of a disability.

Westry has failed to satisfy his minimal burden to show that he was disabled within the meaning of the ADA, or that the adverse employment action occurred because of his disability. Accordingly, the Board's Motion for Summary Judgment is **granted** with respect to Westry's allegation of disability discrimination for failure to set forth a *prima facie* case of discrimination.

2. *Racial Discrimination*

The Board also moves for summary judgment on Westry's racial discrimination claim for two reasons: (1) Westry cannot establish a prima facie case of racial discrimination; and/or (2) Westry cannot establish that the Board's proffered explanation for adverse action was pretextual. Mot. Summ. J, Doc. No. 24.

Courts employ a burden-shifting analysis in reviewing Title VII discrimination cases. *McDonnell*, 411 U.S. at 802; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). In order to survive a motion for summary judgment, Westry "must first establish a *prima facie* case of discrimination based on race." *Graham*, 230 F.3d at 38. If he succeeds, the burden then shifts to the Board "to articulate a non-discriminatory reason for the employee's dismissal. . . . If such a reason is proffered, the burden shifts back to [Westry] to prove that discrimination was the real reason for the employment action." *Id*. (citations omitted).

a. Failure to Establish a Prima Facie Case of Racial Discrimination

The Board argues first that Westry cannot establish a prima facie case of racial discrimination. Mem. in Supp. Mot. for Summ. J., Doc. No. 24-2 at 4. "To meet the burden of production required for a *prima facie* case of discrimination, a plaintiff must show that he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged;[1] and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *Graham*, 230 F.3d at 38 (footnote added). The plaintiff's burden is minimal in order to "survive a motion for summary judgment at the *prima facie* stage." *Id*.

With respect to his racial discrimination claim, the Board concedes that Westry is a member of a protected class and suffered an adverse employment action. Mem. in Supp. Mot. Summ. J., Doc. No. 24-2 at 4. The Board alleges that Westry failed to prove that he was performing his job satisfactorily and that his discharge conditions gave rise to an inference of discrimination. *Id*. Westry alleges that the Board's argument is "a distraction from the real issue: Racism expressed through and perpetrated by Stamford employees' [d]iscrimination against" him. Opp. to M. Summ. J., Doc. No. 28 at 1.

i. Satisfactory Job Performance

The Board argues that Westry cannot show that he was performing his job satisfactorily and, therefore, summary judgment should be granted in their favor for failure to set forth a *prima facie* case of racial discrimination. Mem. in Supp. Mot. Summ. J., Doc. No. 24-2 at 5. The

---

[1] It is clear from the record that Westry actually resigned, rather than being terminated. *See* Ex. J to Mot. Summ. J., Doc. No. 24-1 at 38. The record also makes clear that Westry was given the choice whether to resign or be terminated. Falcone Aff., Ex. D to Mot. Summ. J., Doc. No. 24-1 at 17 ¶ 13. The discharge element of Title VII discrimination is satisfied when a plaintiff does not voluntarily resign. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

Board alleges that Westry's actions giving rise to his arrest violated to following: (1) the Board's Public Trust Policy ("the Policy") under which Westry was employed; (2) state regulations regarding public trust provisions; and (3) the Collective Bargaining Agreement and his employment contract, both of which subjected him to the Policy and corresponding state regulations. *Id*. at 5-6.

The record reflects that Westry was indeed a public trust employee, subject to the Policy. Ex. B to Mot. Summ. J., Doc. 24-1 at 11. The basis of the Policy is that the job effectiveness of employees "depends on the members of the community maintaining respect and confidence in such employees in regards to both their on-duty and off-duty conduct." *Id*. The Policy prohibits employees from "engaging in any conduct on or off school property which could damage the public's trust and confidence in such employees" including "acts of moral misconduct." *Id*. The Policy provides as examples of such behavior "criminal conviction" or "conviction of any crime." *Id*. The Policy makes clear that employees are subject to its provisions even when off-duty. *Id*. Misconduct in violation of the Policy, even that which occurs off school property, can lead to termination of employment. *Id*. The Policy cites to Regulations of Conn. State Agencies §§ 31-236-26c(c)(1), (2) which essentially provides the same information as the Policy: "Off-duty misconduct may be considered to have occurred in the course of employment if it is committed by a public trust employee" which includes teachers. Regs. Conn. State. Agencies §§ 31-236-26c(c)(1), (2). Further, the Board alleges that Westry violated Regulation 10-145d-400a(a), the Code of Professional Responsibility for Teachers, which essentially reiterates that teachers are to conduct themselves with professionalism at all times so as to not lose the public's trust. Although Westry was a school counselor, he is considered a teacher for purposes of the regulations. *See* Regs. Conn. State. Agencies § 10-145d-400a ("'[T]eacher' means a person who

… holds or who is employed under a teaching certificate"); Ex. F to M. Summ. J., Doc. No. 24-1 at 28 (job description signed by Westry that states a qualification of the job as having a valid teacher certificate).

The record makes clear that Westry was asked to resign on the basis of his arrest. In his affidavit, Falcone states that Westry's actions "which led to the imposition of a protective order against him prohibiting him from contacting his wife or child, and which triggered the initiation of an investigation by [DCF] did not comply with the Board's public trust policy … [or] the State Department of Education's Code of Professional Responsibility." Falcone Aff., Ex. D to M. Summ. J., Doc. No. 24-1 at 17 ¶ 12. Falcone informed Westry that "his conduct did not meet the Board's standards." *Id*. at ¶ 13.

Westry was subject to the Policy in place by virtue of his employment as a school counselor, and that the Policy governed his behavior both on- and off-duty. The conduct alleged, if true, would violate the Policy. Westry alleges that the charges were dropped, which I accept as true for purposes of this motion. Accordingly, it is unclear whether mere allegations of such conduct would violate the Policy. Although the list is non-exhaustive, the Policy specifically states *convictions*, not arrests, as examples of prohibited behavior that would lead to an erosion of the public's trust. Westry alleges in his complaint that he was performing his job satisfactorily and did not have any negative performance reviews. For present purposes, I am willing to assume that a jury could find that Westry was performing his job satisfactorily and, therefore, met his burden with respect to this element.

### ii. Circumstances Giving Rise to an Inference of Racial Discrimination

The Board also argues that Westry cannot show that the adverse employment action was taken under circumstances giving rise to an inference of discrimination and, therefore, summary

9

judgment should be granted in its favor for failure to state a *prima facie* case of racial discrimination. Mem. in Supp. Mot. Summ. J., Doc. No. 24-2 at 8.

In order to satisfy his burden under the fourth element of the *prima facie* discrimination claim, Westry "may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham*, 230 F.3d at 39. In order to do so, Westry must show that he was "similarly situated in all material respects to the individual[] with whom [he] seeks to compare [himself]." *Id.* (internal quotation marks omitted). The Second Circuit considers the following factors in determining whether parties are similarly situated in all material respects: "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40. The allegedly similarly situated person's conduct need not be identical to the plaintiff's, but must have "a reasonably close resemblance." *Id.* Although "similarly situated" is generally a question of fact for the jury, a court can make the determination on a motion for summary judgment if the plaintiff fails to raise a genuine issue of material fact. *Id.* at 39; *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Woods v. Newburgh Enlarged School District*, 288 F. App'x 757, 760 (2d Cir. 2008) ("We recognize that the similarity of comparators' situations generally presents a question of fact for the jury. This, however, is a rare case where the issue can be resolved as a matter of law.").

Westry seeks to compare the Board's actions against him to those against Falcone, a white male, who is the Executive Director of Human Resources. Compl., Doc. No. 1 at ¶ 22. The Board argues that Westry and Falcone are not similarly situated because the two hold very different jobs; Westry's job required him to have routine interaction with students in a middle

10

school, whereas Falcone worked at the Board's Central Office; and Falcone and Westry are not members of the same union and are not governed by the same collective bargaining agreement. Mem. in Supp. Mot. Summ. J., Doc. No. 24-2 at 8-10. Further, the Board argues that the conduct in question by Falcone was "clearly distinguishable" from Westry's. *Id*. at 10. For present purposes, I am willing to assume that Westry's and Falcone's jobs were somewhat similar, although they were in different locations with different roles. There is no indication in the record that Falcone was not also a public trust employee, in fact he very likely would be, and therefore, he would be governed by the same Policy at issue here. Where the two differ, however, is in the consequences resulting from their conduct. Westry's conduct led to a DCF investigation initiated against him that, in turn, led to the denial of his "application for the continuation of professional educator certificate." Ex. L Mot. Summ. J., Doc. No. 24-1 at 42; Ex. D Mot. Summ. J., Doc. No. 25-1 at 5, ¶ 21. Falcone stated in his affidavit that he has never been arrested and has never been the subject of a DCF investigation, which, as aforementioned, was the basis of the adverse employment action taken against Westry. Falcone Aff., Ex. D Mot. Summ. J., Doc. No. 25-1 at 18, ¶ 20-21. Westry's conduct led to the denial of his license, a requirement of the job, whereas there is no indication that Falcone's alleged behavior caused any similar consequence.

Further, on the basis of the allegations, Westry fails to show that Falcone's conduct bears a "reasonably close resemblance" to Westry's. *Graham*, 230 F.3d at 40. In his complaint, Westry cites a Stamford Advocate report that seems to allege that Falcone resigned as Superintendent of Darien for failing to comply with special education policies. Compl., Doc. No. 1 at 3, ¶ 22. If that is the conduct Westry seeks to compare to his own, then it is quite

plainly insufficient to satisfy the "similarly situated" test, because the conduct alleged occurred while Falcone was employed by an entirely different school district.

Westry also alleges in his complaint that other employees of the Board treated non-white students poorly, including "fail[ing] to schedule a [b]lack student for a language … and refused to call [the student's] parent back for months" and "repeatedly suspended, misdiagnosed, denied services, and suspended" a Latina student. *Id*. at 2-3, ¶ 13-14. To the extent that Westry uses those allegations as support for his racial discrimination claim, his claim must fail. There is nothing in the record to suggest that the Board knew about the alleged behavior, and Westry cannot here try to hold the Board accountable to him for the actions of other employees.

Accordingly, Westry's claim does not support an inference of racial bias and I therefore **grant** the Board's Motion for Summary Judgment with respect to Westry's allegation of racial discrimination for failure to set forth a *prima facie* case of racial discrimination.

b. Failure to Rebut the Board's Non-Discriminatory Reason

The Board argues next that even if Westry had adequately set forth a *prima facie* case of racial discrimination, summary judgment should still be granted in its favor because Westry has failed to rebut the Board's "legitimate, non-discriminatory business reason for the alleged discriminatory action." Mem. Supp. M. Summ. J., Doc. No. 24-2 at 11.

If a plaintiff succeeds in establishing a *prima facie* case of racial discrimination, the burden then shifts to the Board "to articulate a non-discriminatory reason for the employee's dismissal. . . . If such a reason is proffered, the burden shifts back to [Westry] to prove that discrimination was the real reason for the employment action." *Graham*, 230 F.3d at 38 (citations omitted). "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the prima facie case." *Fischer v. Vassar College*, 114 F.3d 1332, 1335-36 (2d Cir.

12

1997). The Board "need not persuade the court that it was actually motivated by the proffered reasons in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." *Id*. Here, it is quite clear that the Board satisfied its burden in putting forth a neutral, non-discriminatory reason for the adverse employment action: Westry's arrest led to criminal charges, a DCF investigation, a protective order against him, and the denial of his teaching certificate renewal.

Once a defendant has put forth a legitimate alternative reasoning for the adverse employment action, the plaintiff bears the burden of showing that the nondiscriminatory reason was just a pretext and that discrimination was the real reason for the action. *Graham*, 230 F.3d at 38. "In order to do so, [Westry] must present evidence from which a fact-finder could reasonably conclude that [the Board's] reason was pretextual and that the real reason was discrimination." *Pathan v. Connecticut*, 19 F. Supp. 3d 400, 421 (D. Conn. 2014) (internal quotation marks omitted). "Pretext is evaluated on a case-by-case basis, and [a]n employer [is] entitled to judgment as a matter of law if the record conclusively reveals some other nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination has occurred." *Id*. at 421-22 (internal quotation marks omitted).

Here, Westry has failed to establish even an inference that the Board's employment action was pretextual. The only support for Westry's allegations are his conclusory opinions in the complaint that he was discriminated against based on race, and his allegation in his opposition to the Board's motion that the Board engages in institutional racism. The record supports the Board's proffered non-discriminatory reason for taking action against Westry, and

13

he has failed to rebut that reason as pretextual. Accordingly, the Board's Motion for Summary Judgment is **granted**.

### III. The Board's Motion to Compel Discovery Responses

The Board also filed a Motion to Compel Discovery Responses. Doc. No. 20. The Board served Westry with a first set of Interrogatories on July 27, 2017, to which Westry responded on December 18, 2017, but failed to provide any documents. Mem. Supp. Mot. Compel, Doc. No. 20-1 at 1. The Board attempted to resolve the disputes but Westry only supplemented some of his responses. The Board alleges that deficiencies still remain with respect to two interrogatory questions and two production requests. *Id*. at 3-5. Westry alleges that the information sought violates the following: (1) his Fourth Amendment right against search and seizure; (2) his Due Process rights in another court case, namely the state criminal court proceedings; (3) HIPAA; (4) familial confidentiality; and (5) confidentiality between counselor and students. Opp. to Mot. Compel, Doc. No. 22 at 1. Further, he alleges that "this is a distraction from the real issue: Racism expressed through and perpetrated by Stamford employees' [d]iscrimination against" Westry. *Id*. at 1-2. Because I am granting the Board's Motion for Summary Judgment, the Board's Motion to Compel is **denied as moot**.

### IV. Conclusion

The Board's Motion for Summary Judgment (Doc. No. 24) is **granted**. The Board's Motion to Compel Discovery Responses (Doc. No. 20) is **denied as moot**. The Clerk is directed to enter judgment in favor of the defendant and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 24th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge